UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x
                                                 :
                                                 :
MARK SWARTZ,                                     :
                                                 :        12 Civ. 4060
            Plaintiff,                           :
                                                 :        **OPINION**
       v.                                        :
                                                 :
TYCO INTERNATIONAL LTD.                          :
                                                 :
            Defendant.                           :
                                                 :
                                                 :
-------------------------------------------------x

   Plaintiff Mark Swartz is the former Chief Financial Officer of defendant Tyco International Ltd.  He brings this suit to recover money which he claims is owed to him under two different contracts entered into between himself and Tyco before he resigned from the company in 2002.

   Tyco sued Swartz in 2003 seeking disgorgement of all compensation and benefits paid to him in connection with his employment with Tyco.  Tyco Int'l v. Swartz, 03 Civ. 02247 (S.D.N.Y).  That case had been the subject of litigation before this court for more than nine years at the time the complaint in this action was filed.  Most of the issues in the Tyco action were recently tried to the Court without a jury.

1

Swartz's complaint was filed on May 4, 2012 in New York County Supreme Court and removed to this court on May 22, 2012.

Tyco moves to dismiss Swartz's complaint in the new action on the ground that the claims were required to be brought as compulsory counterclaims in the Tyco action but were not.

The motion is granted.

## Swartz's Action

Swartz left Tyco in the fall of 2002, when new management came in. The serious difficulties occurring at Tyco at that time are well known and will not be discussed here.

Swartz is seeking to recover money allegedly owed – but never paid – to him under two contracts: an Executive Retirement Agreement ("ERA") entered into on March 1, 1999 and amended on October 1, 1999 and a separation agreement dated August 1, 2002.

Swartz argues that Tyco has breached both contracts. In addition Swartz claims that Tyco has unjustly enriched itself by taking the value given up by Swartz in the August 1 agreement and then depriving him of the benefit of his bargain by refusing to make the payments contemplated by that agreement.

The ERA provides for the deferred payment of a portion of Swartz's bonus compensation as a retirement benefit. Swartz contends that the ERA entitles him to a lump sum payment of the entire benefit amount. Swartz claims that,

as of August 1, 2011, he was entitled to a payout of $47,643,035.00 under the ERA.

At the time of his departure, Swartz and Tyco entered into an agreement dated August 1, 2002. Tyco agreed to make certain payments to Swartz as stipulated in paragraphs 1 and 2 of the agreement which are here quoted:

1. The Company agrees to pay within 10 days of the execution of this Agreement to Swartz the following amounts: (a) the amounts due to Swartz under the Company's Deferred Compensation Plan; (b) the current value of Swartz's Executive Life Insurance program; (c) the amounts due to Swartz under his 401(k) plan; and (d) the amounts due to Swartz under his Senior Executive Retirement Program; and Swartz agrees not to make any claim under his executive retirement agreement at this time;

2. Swartz agrees to waive his rights under the August 1, 2001 amendment to his Retention Agreement dated January 22, 2001; and the Company agrees to fulfill its obligations under the original Retention Agreement dated January 22, 2001, and will treat Swartz's leaving the company as if it were a resignation for Good Reason as defined in the original Retention Agreement (and the date of resignation shall be August 1, 2002 for the purposes of the original Retention Agreement);

The reference to "Senior Executive Retirement Program" is mistaken in its use of the word "Senior." The correct name is "Supplemental Executive Retirement Program," which is sometimes given the shorthand "SERP." The last clause of paragraph 1 refers to something different – the ERA described earlier in this opinion.

It appears that Tyco made the payments required under sections (a) and (b) of paragraph 1 of about $35 million.  Tyco also paid a portion of the amount required under paragraph 2, which incorporates by reference Swartz's Retention Agreement, amounting to about $9 million.  Thus total payments were made under the August 2002 agreement of about $44 million. At the trial recently held in the Tyco action, the court held that Swartz is not required to disgorge the $44 million already paid under the August 2002 agreement.

It appears the amounts required under (c) and (d) of paragraph 1 have not been paid.  These amounts are not substantial.  But Swartz has also not been paid approximately $9 million required to be paid by Tyco under paragraph 2 of the August 2002 agreement as reimbursement for New York State and City taxes paid by Swartz, something originally agreed to in Swartz's Retention Agreement.  The $9 million tax liability was fixed in a settlement agreement between Swartz and the State of New York in July 2008.

It is clear that the claims in Swartz's new action of real substance are the claim for $47 million under the ERA and the claim for $9 million relating to taxes.  This was not dealt with at the recent trial of the Tyco action.

Swartz claims that he demanded, by a letter dated June 10, 2010, that Tyco perform its obligations under these agreements.  Specifically he demanded payment of the balance due under the ERA, as well as what he claims was still owed him under the August 1 agreement:  the balance of his SERP account, his

401(k), and amounts he had paid in New York State and City taxes. Tyco refused his demand in a letter dated September 8, 2010.

Swartz relies heavily on the September 8, 2010 letter. This letter allegedly constitutes the breach of contract that forms the basis for this action. But, in fact, this letter merely reiterates an earlier letter. The 2010 letter states:

> We are in receipt of your letter dated June 10, 2010. Tyco rejects in full the demands for payment under the ERA, SERP and August 1, 2002 separation agreement presented therein. We note that your letter ignores the correspondence between Mr. Swartz and Tyco's special appeals committee with respect to Swartz's benefits under the ERA and the SERP that occurred during 2004.

The 2004 letter itself is lengthy, but its import with respect to this case is clear. It says:

> Based on its review, the Special Appeals Committee has determined that you are not entitled to benefits under the [SERP and ERA] attributable to compensation from the Company starting from and after 1995.

### The Tyco v. Swartz Action

In April 1, 2003, Tyco filed suit against Swartz in connection with his role in the scandal at Tyco. On both claims, Tyco sought disgorgement of "all compensation and benefits (whether in cash, stock, options or otherwise) he received from Tyco from the inception of his wrongful conduct through the date of his departure."

Swartz answered this complaint in September 2004, but did not assert any counterclaims. This case has been the subject of active litigation ever since.

5

**Legal Standard**

A complaint must be dismissed if it attempts to bring claims that were compulsory counterclaims in another action.  See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc., 233 F.3d 697, 699 (2d Cir. 2000).  A counterclaim is compulsory if it arises out of the same transaction or occurrence as another claim brought by an opposing party in a lawsuit, or if the underlying facts of the two claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. Id.  Naturally, however, a party need not plead a claim that has not yet accrued when it files its responsive pleadings.  Id.

**Discussion**

There can be little doubt that the claim in Swartz's new action bears a close connection to the matters presented in the Tyco action which put at issue Tyco's obligation to pay Swartz under the ERA, SERP, and Swartz's 401(k).  Also, Swartz knew at least by 2004 that Tyco had rejected the claims, which he had made to Tyco, for payment under the ERA and SERP.  Consequently, the court holds that Swartz's action must be dismissed with respect to Swartz's claims relating to the ERA, SERP, and his 401(k).  These must be considered as compulsory counterclaims which should have been brought in response to the Tyco action.

However, it does not appear that Swartz demanded reimbursement for his New York State and City taxes until the September 2012 letter. The 2004 letter discussed above dealt only with Swartz's claims under the ERA and SERP. Moreover, Swartz could not have brought this claim as a counterclaim against Tyco in the Tyco action because Swartz's tax liability was not ultimately settled with the State of New York until 2008.

Tyco's obligation to reimburse Swartz had not accrued when Swartz answered Tyco's complaint in 2004 because Swartz had not yet paid the New York taxes and did not know what amount would ultimately be paid. Consequently, in September of 2004, Swartz had no claim for reimbursement to bring as a counterclaim in the Tyco action. Therefore, Tyco's motion to dismiss is denied as to Swartz's breach of contract claim stemming from Tyco's alleged failure to reimburse Swartz for his New York State and City tax payments.

It is apparent, however, that Swartz's related claim for unjust enrichment is duplicative of his breach of contract claim. Under New York law, a claim for unjust enrichment is unavailable for conduct that might also form the basis for an action for breach of contract. See Whitman Realty Group, Inc. v. Galano, 838 N.Y.S.2d 585, 588 (2d Dept.2007). Therefore this unjust enrichment claim must also be dismissed.

However, nothing in the present ruling should be construed as a departure from the ruling in the Tyco lawsuit to the extent that Swartz is entitled to retain the $44 million paid to him.

So ordered.

Dated: New York, New York
       October 22, 2012

                                                Thomas P. Griesa
                                                U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Oct 22, 2012